IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

**ENTERED**
**06/12/2012**

|  |  |  |
|---|---|---|
| | ) | |
| IN RE | ) | |
| | ) | |
| FLAGSHIP HOTEL, LTD., | ) | CASE NO. 04-81356-G3-11 |
| | ) | |
| Debtor, | ) | |
| | ) | |
| FLAGSHIP HOTEL, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | ADV. NO. 05-8042 |
| | ) | |
| CITY OF GALVESTON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>MEMORANDUM OPINION</u>

The court has held a hearing on the "Defendant City of Galveston's Renewed Motion to Dismiss Abated Adversary Proceeding" (Docket No. 98).  The following are the Findings of Fact and Conclusions of Law of the court.  A separate Judgment will be entered dismissing the above captioned adversary proceeding for lack of subject matter jurisdiction.  To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such.  To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

<u>Findings of Fact</u>

Flagship Hotel, Ltd. ("Flagship") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on July 30, 2004.

<u>The Underlying Dispute</u>

On the date of filing of its Chapter 11 petition, Flagship operated the Flagship Hotel, which was then located on a pier extending from Galveston Island into the Gulf of Mexico.[1]

The pier on which the hotel was located was in some disrepair.  The condition of the pier led to disputes between Flagship and the City of Galveston (the "City").  The City provided water service to the hotel, and there were disputes regarding the billing for water service provided between May, 1990 and November, 1995.  The City contended that Debtor owed $196,291.15 for water and sewer services.

<u>Pre-Bankruptcy Litigation</u>

In litigation originally filed in the 405th Judicial District Court of Galveston, Texas, Flagship obtained a temporary injunction prohibiting the City from terminating its water service to the hotel.  The City appealed the judgment of the 405th Judicial District to the Texas Court of Appeals.  That court vacated the temporary injunction, holding that, under the

---

[1]The pier, which Flagship leased from the City of Galveston, apparently was severely damaged by Hurricane during 2008.  A rebuilt pier, with an amusement park, has been built on the site.

Texas Water Code, the trial court (the 405th Judicial District Court) lacked jurisdiction over the dispute regarding the "alleged water service arrearage and the City's intention to discontinue water service to the hotel."  City of Galveston v. Flagship Hotel, Ltd., 73 S.W.3d 422 (Tex. App.--Houston [1st Dist.] 2002).

The Texas Court of Appeals stated in its March 14, 2002 opinion that "instead of seeking emergency injunctive relief through the courts, a municipal water customer may seek similar relief from the TNRCC, after exhausting the administrative remedies provided by the municipality." 73 S.W.3d, at 427.[2]

On March 18, 2002, four days after the court of appeals ruled, Flagship filed a request with TNRCC for emergency orders compelling the City to provide water service.  (City Exhibit 18).  On the same date, TNRCC, despite the Texas Court of Appeals having ruled that a water customer may seek such relief from TNRCC, responded to Flagship's request.  In its response, TNRCC stated that TNRCC did not have jurisdiction to issue the emergency order requested by Flagship.  (City Exhibit 17).

In the complaint in the instant adversary proceeding, Flagship asserts that on March 18, 2002, it paid the amounts the

_____

[2]The TNRCC was the Texas Natural Resource Conservation Commission, a regulatory entity of the State of Texas.  The successor entity of the TNRCC is the Texas Commission on Environmental Quality ("TCEQ").

City had alleged were due.  Flagship then demanded a refund from the City.  (Docket No. 1, at para. 14).

In the 405th Judicial District Court of Galveston County, Texas, in the suit in which Flagship had initially sought and obtained the preliminary injunction that was later vacated by the Texas Court of Appeals, Flagship sought a declaratory judgment regarding the City's water and sewer billing.  The 405th Judicial District Court granted the City's plea to the jurisdiction, in light of the ruling of the Texas Court of Appeals.  The request for declaratory judgment was dismissed for want of subject matter jurisdiction.  Flagship appealed the dismissal by the 405th Judicial District Court of the request for declaratory judgment.  On appeal, the Texas Court of Appeals held that "Flagship must exhaust its administrative remedies through the Texas Commission on Environmental Quality, formerly the TNRCC."  Flagship Hotel, Ltd. v. City of Galveston, 117 S.W.3d 552 (Tex. App.--Texarkana 2003).

<u>The Chapter 11 Case</u>

The City appealed the ruling of the 405th Judicial District Court, on other grounds.  Notably, the City contended that it was entitled to terminate Debtor's lease of the hotel. Prior to the Court of Appeals' ruling, which ultimately held that Flagship's lease term was extended until 2031, the City

4

purportedly sold the right to use the property to Landry's Restaurants, Inc.  ("LRI")

On April 19, 2004, LRI gave notice to Flagship that it intended to inspect the property on April 21, 2004.  On April 30, 2004, LRI gave notice to Flagship that LRI intended to terminate the lease after 30 days, unless Flagship corrected 92 items identified by LRI within that time period.  On June 4, 2004, LRI gave notice declaring Flagship's lease forfeited.  LRI subsequently filed an action for forcible detainer.  Before a final judgment was rendered in the forcible detainer action, Flagship filed the Chapter 11 petition in the instant case.

By order (Docket No. 250, Case No. 04-81356-G3-11) entered on November 1, 2005, Flagship's Chapter 11 plan (Docket No. 237, Case No. 04-81356-G3-11) was confirmed.  The plan provided for a settlement between Flagship and LRI which would provide for an end to Flagship's lease term during either 2007 or 2009.  The plan also provided that the property of the bankruptcy estate would revest in Flagship at confirmation the plan, and that Flagship retained enforcement of causes of action.  (Docket No. 237, Case No. 04-81356-G3-11).

This court determined that the bankruptcy estate was fully administered, and an order was entered closing the Chpater 11 case, on December 19, 2007.  (Docket No. 305, Case No. 04-81356-G3-11).

5

<u>The Instant Adversary Proceeding Through Abatement</u>

In the complaint in the instant adversary proceeding, Flagship sought turnover of $215,920.15, asserting that it was entitled to a refund of amounts it alleges it overpaid during 2002 for water and sewer services provided from 1990 through 1995.  (Docket No. 1).  The complaint was filed on July 22, 2005.

On February 15, 2007, more than one year after confirmation of Flagship's Chapter 11 plan, the City filed its second motion (Docket No. 70) to dismiss the above captioned adversary proceeding.[3]  In the second motion, the City argued that this court lacked subject matter jurisdiction, because Flagship sought turnover relief pursuant to 11 U.S.C. § 542, and that such relief was not available for a claim that had not been determined by a court of competent jurisdiction.

This court held, in a Memorandum Opinion (Docket No. 72) and a Judgment (Docket No. 74) entered on February 16, 2007, that judicial economy was best served by abating this adversary proceeding, pending a determination of the merits of the underlying claim, either in a court of competent jurisdiction, or by agreement.

<u>Subsequent Non-Bankruptcy Litigation</u>

On April 4, 2007, Flagship filed an amended petition with TCEQ, requesting that TCEQ rule on its jurisdiction to hear

---

[3]The first such motion (Docket No. 7) was denied.

6

the dispute between the City and Flagship regarding Flagship's attempts to recover the funds paid to the City.  (Flagship Exhibit A).

On June 8, 2007, TCEQ referred the application filed by Flagship to the State Office of Administrative Hearings ("SOAH"). (Flagship Exhibit B).  An Administrative Law Judge ("ALJ") in the SOAH set a hearing for November 5, 2007. (Flagship Exhibit E).

After the hearing, the ALJ certified to the TCEQ the question:  "Whether the Commission, pursuant to Texas Water Code Section 13.042(d), has exclusive appellate jurisdiction to review orders of a governing municipality, including those orders pertaining to the municipality's own water and sewer service customers."  The TCEQ answered "No." to the certified question. (Flagship Exhibit H).

In light of TCEQ's determination that it does not have exclusive appellate jurisdiction, the ALJ dismissed Flagship's petition for review of the City's denial of Flagship's request to refund the payment it made in 2002.  (Flagship Exhibit I).  On February 23, 2008, TCEQ dismissed Flagship's petition for lack of jurisdiction.  (Flagship Exhibit K).

Flagship appealed the TCEQ's determination that it lacked jurisdiction to the 98th Judicial District Court of Travis County, Texas.  Both the City and TCEQ moved to dismiss, asserting that the 98th Judicial District Court lacked subject

7

matter jurisdiction.  The 98th Judicial District Court denied the motions to dismiss, and both the City and TCEQ appealed to the Texas Court of Appeals.  The Texas Court of Appeals held that Flagship, which had sought a determination that TCEQ lacked jurisdiction, and obtained such a determination, was not an aggrieved party, and thus lacked standing to appeal.  <u>City of Galveston v. Flagship Hotel, Ltd.</u>, 319 S.W.3d 948 (Tex. App.--Austin 2010).  Flagship sought review of the ruling of the Texas Court of Appeals by the Texas Supreme Court.  The Texas Supreme Court declined review on December 16, 2011.  (City Exhibit 1).

The Instant Motion

In the instant motion, the City again seeks dismissal.  The City argues that 1) this court wrongly abated the adversary proceeding previously, instead of dismissing it; and 2) the case should be dismissed in light of confirmation of the plan, administration of the bankruptcy estate, and entry of a final decree in the above captioned Chapter 11 case.  (Docket No. 98).

Flagship argues that dismissal would defeat the purpose of this court's abatement, and would deprive it of a forum in which it may seek redress of its claims.  (Docket No. 99).

Conclusions of Law

Under 28 U.S.C. § 1334(b), the district court has "original but not exclusive jurisdiction of all civil proceedings

arising under title 11, or arising in or related to cases under title 11."

A proceeding is "related to" a bankruptcy if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.  Wood v. Wood, 825 F.2d 90 (5th Cir. 1987).

In In re Craig's Stores of Texas, Inc., 266 F.3d 388 (5th Cir. 2001), the Fifth Circuit held:

> After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan.

266 F.3d, at 390.

The Fifth Circuit has clarified its holding in Craig's Stores, In In re U.S. Brass Corp., 301 F.3d 296 (5th Cir. 2002), the plan provided that two of the debtor's suppliers, which asserted claims against the debtor's insurers, would institute litigation in a court of competent jurisdiction.  Subsequent to confirmation, the suppliers sought approval of a settlement under which their claims against the insurers would be subjected to binding arbitration.  The Fifth Circuit held that the bankruptcy court had jurisdiction:

> Bankruptcy law will ultimately determine this dispute, and the outcome could affect the parties' postconfirmation rights and responsibilities. Furthermore, this proceeding will certainly impact compliance with or completion of the reorganization plan.  Consequently, the Appellants' motion pertains to

> the plan's implementation or execution and therefore
> satisfies the Craig's Stores test for post-confirmation
> jurisdiction.

301 F.3d, at 305.

In In re Biloxi Casino Belle Inc., 368 F.3d 491 (5th Cir. 2004), the Fifth Circuit examined its jurisdiction over a dispute between the debtor's indenture trustee (as assignee of the parent debtor's security interest in its operating subsidiary's assets) and the debtor's title insurance company. The Fifth Circuit held that bankruptcy court had jurisdiction, noting that a contractor which asserted a lien in the underlying assets had settled its lien priority litigation with the indenture trustee, in exchange for the indenture trustee's assignment of any recovery against the title insurance company to a liquidating trust created under the plan.

In In re Seven Seas Petroleum, Inc., 522 F.3d 575 (5th Cir. 2008) the Fifth Circuit extended the holding in U.S. Brass, holding that bankruptcy "jurisdiction extends to matters that 'impact compliance with or completion of the reorganization plan.' The district court was thus correct in assuming that bankruptcy jurisdiction would exist over any claims that attempt to 'subvert' a confirmed plan." 522 F.3d, at 589 (internal citation omitted).

Resolution of the claim pled in the instant adversary proceeding does not turn on bankruptcy law. There are no

10

considerations of compliance with or completion of the reorganization.  The reorganization has long since been concluded and the underlying Chapter 11 case closed.  This court concludes that it lacks subject matter jurisdiction with respect to the claim pled in the complaint in the instant adversary proceeding.

Because this court determines that it lacks subject matter jurisdiction, the court does not reach the City's argument that the instant adversary proceeding should not have been abated.

This court recognizes the frustration Flagship must feel at this point.  This court's ruling is without prejudice to Flagship's returning to state district court or another court of competent jurisdiction for a chance to litigate its rights now that it has been determined by the state that TCEQ can afford no relief.  It appears Flagship has exhausted its administrative remedies in the eyes of the state.

Based on the foregoing, a separate Judgment will be entered dismissing the above captioned adversary proceeding for lack of this court's subject matter jurisdiction.

Signed at Houston, Texas on June 12, 2012.


LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

11